UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION


U S EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

VERSUS

ECOSERVE L L C

CASE NO.  6:23-CV-01321


JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE DAVID J. AYO


<u>MEMORANDUM RULING AND ORDER</u>

Before this Court is ECOSERV LLC'S MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES [Doc. 97] requesting responses to multiple discovery requests and supplementation of multiple discovery responses. Plaintiff U.S. Equal Employment Opportunity Commission (EEOC) filed an opposition [Doc. 106] to which Ecoserv replied [Doc. 107]. For the reasons below, the motion is GRANTED IN PART and DENIED IN PART.

<u>Factual and Procedural Background</u>

The EEOC brought this action against Ecoserv alleging that Ecoserv engaged in unlawful discrimination by (1) regularly denying employment to applicants who are Black, female, and/or 40 years old or older for non-salaried, non-office positions because of race, sex, and/or age; and (2) retaliating against Felicia Savoie, who opposed Ecoserv's actions. After failed conciliation efforts, the EEOC filed suit against Ecoserv seeking injunctive relief, money damages, interest, and attorney's fees.  [Doc. 1].  In relevant part, the EEOC seeks, among other remedies, pecuniary damages for Savoie's lost wages.

In the Complaint, the EEOC alleges the following statistics regarding Ecoserv's discriminatory hiring:

- "Since at least 2016, Defendant has selected Black applicants for non-salaried, non-office positions at rates far below their availability in the relevant labor pools because of their race. For example, data showed that of the 173 employees Ecoserv hired between 2016 and 2019 for non-salaried, non-office positions, only 55 were Black.

1

Black applicants were disproportionately denied employment at a statistically significant rate because of their race." [Doc. 1 at ¶36].

- "Since at least 2016, Defendant has selected female applicants for non-salaried, non-office positions at rates far below their availability in the relevant labor pools because of their sex. For example, data showed that of the 173 employees Ecoserv hired between 2016 and 2019 for non-salaried, non-office positions, none were female. Female applicants were disproportionately denied employment at a statistically significant rate because of their sex." [*Id*. at ¶37].

- "Since at least 2016, Defendant has selected applicants who were 40 years or older for non-salaried, non-office positions at rates far below their availability in the relevant labor pools because of their age. For example, Data showed that of the 143 employees Ecoserv hired between 2017 and 2019 for non-salaried, non-office positions, only 13 were 40 years of age or older. Applicants who were 40 years old or older were disproportionately denied employment at a statistically significant rate because of their age." [*Id*. at ¶37].

It appears to be uncontested that on August 16, 2024, Gregory Juge, an attorney at the EEOC, publicly discussed the details of this litigation and the statistics averred in the Complaint in a Continuing Legal Education (CLE) presentation for the Louisiana State Bar Association, stating that "the investigative file reflects on the order of, I think, 70 or 75 shortfalls in terms of how many expected members of the black, and older, and female groups would have been hired that were not hired." [Doc. 97-18 at p. 2]. This presentation is publicly available online on the Louisiana State Bar Association's website. [*Id*.].

On January 30, 2024, Ecoserv propounded discovery requests to the EEOC. [Doc. 97-3]. On February 21, 2024, March 23, 2024, and October 11, 2024, Ecoserv propounded additional discovery requests to the EEOC. [Doc. 97-4, 97-5, 97-6]. The EEOC sent responses and objections to Ecoserv's requests. [Doc. 97-7]. On March 13, 2025, Ecoserv's counsel sent correspondence to the EEOC's counsel requesting that the EEOC supplement its responses. [Doc. 97-1 at p. 1]. The EEOC objected, in relevant part, to Ecoserv's requests for production of (1) documents regarding its statistical analyses to produce the statistics averred in the Complaint and (2) Savoie's tax returns. The parties conferred but were unable to reach a resolution.

2

In an email dated April 17, 2025, from Elizabeth Owen, counsel for the EEOC, to Matt McCluer, counsel for Ecoserv, Owen stated that "any census data that may be used to support the EEOC's claims is publicly available and equally accessible to Ecoserv and its testifying expert… We shared that, given that the data files are housed by the census and publicly available at any time, the EEOC typically does not store census files in its systems. I did *not* agree, however, to produce voluminous census data, which the Ecoserv can download itself. We offered to provide Ecoserv with a link to census data by April 30th." [Doc. 97-17 at p. 5]. In a letter dated April 25, 2025, from Owen to McCluer, Owen stated that the "EEOC will not be producing Ms. Savoie's full federal income tax returns, as they are not proportionate to the needs of this case. *See Natural Gas Pipeline Co. v. Energy Gathering*, 2 F.3d 1397, 1411 (5th Cir. 1993) ('Income tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of discovery.')." [Doc. 97-16 at p. 1]. Owen noted that the W-2 transcripts produced reflected all of Ms. Savoie's employment-related earnings. *Id.* In an April 30, 2025 email in response to Ecoserv's continued requests for the data used to calculate the statistics averred in the Complaint, counsel for the EEOC stated that the EEOC had "produced, among other documents, applications for employment with Ecoserv, lists of employees at Ecoserv, lists of Ecoserv's hires, Louisiana workforce data, and EEO-1 data in its possession… We note, without waiving any objections, that labor workforce data is the public domain and available to Ecoserv at https://www.bls.gov/oes/tables.htm." [Doc. 97-17 at p. 3]. In the instant motion, Ecoserv seeks responses from the EEOC to various discovery requests or supplementation of responses, generally seeking information upon which the EEOC bases the above-mentioned statistics averred in the Complaint and Savoie's tax returns. [Doc. 97].

Regarding the bases of the statistics averred in the Complaint, the EEOC argues that the material sought to be compelled is not discoverable under the deliberative process

privilege and/or the work product privilege. Ecoserv agues that, because the material sought to be compelled is factual in nature, it is discoverable and is not protected by the deliberative process or work product privilege.  Ecoserv further argues that, if the material sought to be compelled is protected by the deliberative process privilege, the EEOC has waived this protection by averring statistical findings based on the material sought to be compelled in the Complaint and by publicly discussing the statistical findings in a CLE presentation. [Doc. 97-18 at p. 2].

Regarding Savoie's tax returns, the EEOC argues that production of Savoie's full federal tax returns is not proportionate to the needs of the case, while Ecoserv argues that Savoie's tax returns are central to her lost wages claim.  The EEOC has produced Savoie's W-2 Forms relevant to her employment with Ecoserv and her subsequent employment, which the EEOC contends are sufficient.

## Law & Analysis

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 37(a)(3)(B) permits a party seeking discovery to move for an order compelling disclosure of any materials requested if another party fails to answer an interrogatory submitted under Rule 33 or to produce documents as requested under Rule 34. An evasive or incomplete answer or response must be treated as a failure to answer or respond. FED. R. CIV. P. 37(a)(4). "For a motion to compel, '[t]he moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.'" *Mirror Worlds Technologies, LLC v. Apple, Inc.*, 2016 WL 4265758 at *1 (E.D. Tex.). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the

4

discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.*

The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947)), and "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross,* 23 F.3d 1091, 1096 (6th Cir. 1994).

    i.    *Statistical Analysis and Data*

"The Freedom of Information Act (FOIA) requires that federal agencies make records available to the public upon request, unless those records fall within one of nine exemptions. Exemption 5 incorporates the privileges available to Government agencies in civil litigation, such as the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 263, 141 S. Ct. 777, 783, 209 L.Ed.2d 78, 84 (2021). "To protect agencies from being forced to operate in a fishbowl, the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *United States EEOC v. Enter. Leasing Co. of Fla., LLC*, 2024 WL 1210364, at \*5-6 (S.D. Fla. 2024) (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. at 267). Information and material "prepared in order to assist an agency decision-maker in arriving at his decision" to which the deliberative process privilege applies "may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer

5

rather than the policy of the agency." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004). This privilege does not apply to information or materials that are purely factual or objective in nature. *EPA v. Mink*, 410 U.S. 73, 87-89, 93 S. Ct. 827, 35 L. Ed. 2d 119 (1973); *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881 (5th Cir. 1981). As the purpose of the privilege is to protect the full and free exchange of information in the agency, the test is whether disclosure would serve only to reveal the evaluative process by which a member of the decision-making chain arrived at his conclusion. *Skelton v. United States Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982*). See N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 44 L. Ed. 2d 29 , 95 S. Ct. 1504 (1975). It is the EEOC's burden to establish that the information that Ecoserv seeks to compel is privileged. *Hopkins v. United States Dep't of Housing & Urban Dev.*, 929 F.2d 81, 86 (2nd Cir. 1991). The Fifth Circuit has held that purely statistical reports absent subjective conclusions are factual, not deliberative, in nature and are not shielded by the deliberative process privilege. *Pac. Molasses Co. v. NLRB*, 577 F.2d 1172 (5th Cir. 1978).

In this case, it is unclear to the Court whether the EEOC relied on data from the census, data from the documents produced to the EEOC by Ecoserv itself, a combination of both, or a combination of the two aforementioned sources and sources not yet disclosed by the EEOC. It is clear, however, that any documents produced to the EEOC by Ecoserv may not be withheld from Ecoserv under any doctrines of privilege or confidentiality, nor may any documents that the EEOC has admitted are publicly available on the website of the Census Bureau. [Doc. 97-17, p. 3]. By pleading these specific statistical findings, the EEOC has made its statistical analysis a point of controversy, therefore waiving any privilege over supporting factual data. Furthermore, the discussion of such statistical findings in a setting so public as a CLE presentation made available on the website of the Louisiana State Bar

6

Association negates the persuasiveness of the argument that the factual data underlying these statistical findings is privileged.

The deliberative process privilege has "finite limits, and one of these limits is that memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda but severable from its context is generally available for discovery by private parties in litigation with the Government." *Pac. Molasses Co. v. NLRB*, 577 F.2d 1172, 1183 (5th Cir. 1978). The privilege, therefore, "requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *Id.* (quoting *EPA v. Mink*, 410 U.S. 73, 86, 93 S. Ct. 827, 35 L. Ed. 2d 119 (1973)). The distinction between "purely factual" material as opposed to information which is "deliberative in nature" is the factor which controls whether purportedly privileged documents should be disclosed. As facts can be intermixed with analysis, a careful case-by-case analysis of the material sought is necessary. *Skelton v. United States Postal Serv.*, 678 F.2d 39 (5th Cir. 1982*)*.

The work-product doctrine, codified by Rule 26, shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947); *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 403 (M.D. La. 1992). This is not to say that "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases." *Id.* Under Rule 26, "[in] ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." The work product privilege does not extend to the underlying facts relevant to the litigation. *See generally Upjohn v. United*

7

*States,* 449 U.S. 383, 395-96, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).

Here, the EEOC has set forth statistical findings, which are factual in nature and can plainly be proven true or false, in its Complaint but has refused to reveal the underlying data, which is also factual in nature, used to come up with these statistical findings. Regardless of whether the EEOC typically keeps raw data from the census in its files, by alleging facts based on such data, the EEOC has created an obligation to produce the data. As previously stated, information/data that is admittedly publicly available is not privileged. A mathematical finding is arguably one of the most factual types of assertions that can be made in the course of litigation, and the argument that the EEOC may hire an expert in the future and may come up with new statistics using different and/or potentially more robust data has no bearing on the discoverability of the raw data upon which the EEOC bases statistical findings averred in the Complaint. The findings have already been placed squarely at issue by being made part of the Complaint regardless of whether those findings may be refined or corrected by an expert as this litigation progresses. As such, and as previously discussed, the EEOC is ordered to produce the raw data used to come up with the statistical findings set forth in the Complaint, whether that data comes from the census, Ecoserv itself, or some source not yet disclosed.

As for the memoranda and correspondence in the EEOC's possession analyzing the raw data and discussing the ultimate statistical findings, the Court finds that these documents may be shielded by the work-product privilege and/or the deliberative process privilege, and it would be very difficult, if not impossible, for the court to make this fact-intensive, case-specific determination without review of the documents at issue. Therefore, the EEOC is ordered to submit to the Court, for purposes of an *in camera* review, any memoranda, analyses, mathematical calculations, emails, and other information and material, to which the statistical findings averred in the Complaint related, and to which it

contends the deliberative process and/or work product privileges apply. The Court will issue a supplemental ruling upon review of the submitted items. Under these circumstances, an award of fees and costs would be unjust. FED. R. CIV. P. 37(a)(5)(A)(iii).

    *ii.*      *Savoie's Tax Returns*

In the Complaint, the EEOC on behalf of Savoie seeks "appropriate backpay with prejudgment interest," and "compensation for past and future pecuniary losses resulting from the unlawful practices described above, including job search expenses…" [Doc. 1 at Prayer]. The EEOC has produced Savoie's W-2 Forms relevant to her employment with Ecoserv and her subsequent employment.

Tax returns are highly sensitive documents and the court will only compel their production where the requesting party "demonstrates both: (1) that the tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax returns is not 'otherwise readily obtainable' through alternative forms of discovery, such as depositions or sworn interrogatory answers." *Butler v. Exxon Mobil Ref. & Supply Co.*, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (citing *Natural Gas Pipeline Co. of America*, 2 F.3d 1397, 1411 (5th Cir. 1993)). However, numerous courts have recognized that tax return information is relevant where a plaintiff has placed the subject of his income/earning capacity at issue in litigation. *Butler*, 2008 WL 4059867, at *2. The Court is cognizant of the privacy issues raised by the release of the tax return information but is confident that the Protective Order sufficiently addresses that concern as it expressly references tax returns. [Doc. 78, ¶2]. Because the EEOC is seeking for Savoie compensatory damages for lost and unpaid wages and raises the issue of back pay, the calculation of offsets to any back pay award has been placed squarely at issue, and Ecoserv may explore Savoie's earnings subsequent to her employment with Ecoserv. Savoie's W-2s give only a partial picture of her earnings, and the EEOC's responses did not

indicate whether the W-2s produced provided a full picture of *all* of Savoie's earnings information for the relevant years. Thus, the undersigned finds that some production of her tax returns may be relevant to the issue of her alleged economic losses.  Though such information may be relevant, that does not necessarily mean that it will be admissible at trial.  *See* FED. R. CIV. P. 26(b)(1). The Court, therefore, orders that these records be produced via a signed authorization by Savoie. In the alternative, the EEOC may provide the IRS and Louisiana state income tax returns to Ecoserv.

## Conclusion

For the forgoing reasons, ECOSERV LLC'S MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES [Doc. 97] is GRANTED IN PART and DENIED IN PART.  As such, it is hereby

**ORDERED** that the EEOC produce the underlying data used from the census, the documents produced by Ecoserv, and any other sources of raw data, making clear which numbers were relevant in the mathematical calculation of the statistical findings alleged within 45 days of the issuance of this ruling.   It is further

**ORDERED** that the EEOC shall submit to the Court for an *in camera* review any memoranda, analyses, mathematical calculations, emails, and other information and material, to which it contends the deliberative process privilege applies within 45 days of the issuance of this ruling, after which the Court will issue a supplemental ruling.  It is further

**ORDERED** that the EEOC produce a signed authorization to release Savoie's tax returns, or, in the alternative, provide the IRS and Louisiana state income tax returns to Ecoserv.  It is further

**ORDERED** that Ecoserv's request for costs and fees contained in the motion pursuant to Rule 37(a)(5) is denied.

Signed at Lafayette, Louisiana on this 31st day of March, 2026.

**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**